## Pool v. Commonwealth.

October 28, 1947.

Rehearing denied March 26, 1948.

R. M. Coleman, Judge.

Rodes K. Myers, Leland H. Logan, Wilbur O. Bilyeu and August Winkenhofer, Jr. for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

Appellant was indicted for the murder of Henry Clay Huskey; he was convicted of voluntary manslaughter and sentenced to serve two years in the State Reformatory. He urges reversal because (1) the verdict is palpably against the evidence; and (2) the Court erred in admitting incompetent evidence.

Following an altercation which arose in a "crap game," appellant struck Huskey several times on and about the head with the barrel of a revolver; the barrel penetrated Huskey's eye and pierced his brain, causing his death a few hours thereafter.

Appellant argues, in support of his first contention, that all of the witnesses testified to a plain case of self-defense. He apparently overlooked the testimony of John Potter, which is as follows:

"Q. What happened? A. We were shooting dice, and Val and Huskey came in, and as they came around, the dice got around to Pool, Pool shot the dice, and somebody had Pool faded, and Pool passed, and he let the dice go. This Huskey boy, Henry Clay Huskey, faded him.

"Q. Where was Huskey sitting? A. At the foot of the bed.

"Q. Beside Pool or across from him? A. In front of him. Pool picked up the dice and throwed them. He was not rolling them to satisfy Huskey—

"Q. Henry Clay Huskey, you mean? A. Yes, sir.

"Q. Then what happened? A. He said, 'Bring them dice up' and Pool just got up and said, 'Listen, if you don't like my shot, get your money off of me.'

"Q. Huskey said that? A. Yes.

"Q. He was not rolling them right? A. He was short rolling them.

"Q. Rolling them close to him? A. Yes, and Pool shot the dice out and that time the dice went out, and Huskey said, 'Shame on you. Can't you do no better than that?'

"Q. He said, 'Throw them out?' A. Yes, and they went out that time.

"Q. What do you mean? A. He did not pass.

"Q. You mean, he crapped out? A. He already had his point.

"Q. He did not make his point? A. He did not make it.

"Q. What did Huskey say, then? A. 'Shame on you. Can't you do no better than that?' They passed a few words, and I forget what all they said.

"Q. That was between these two men, Huskey and Pool? A. Yes, sir. The dice come on around and got to Huskey.

"Q. What was Pool doing all this time? A. Sitting in the chair watching Henry Clay.

"Q. Sitting or standing? A. Standing.

"Q. Did Pool—how was Pool dressed? A. Had on an overcoat and a suit of clothes.

"Q. He was looking at Henry Clay and what was he doing? A. Just looking at him with his hand under his coat—never did take his eyes off him.

"Q. The dice got around to Henry Clay? A. He told one of the boys to move over to let him down to shoot the dice. Huskey went to get down there, and Pool said, 'You drop that gun.'

"Q. Pool said, 'You drop that gun'? A. Yes. And he said, 'I ain't got no gun.' And Pool, he said, 'Yes, you have.'

"Q. Did Pool have his gun? A. He had his gun on him.

"Q. What gun? A. His .38 Smith and Wesson.

"Q. That big gun on the table over there? A. Yes, sir. Huskey lifted his hands up and threw his pistol over on the bed.

"Q. Where did he get the gun? A. He reached inside his coat.

"Q. You say you saw him pull his pistol out? A. Yes, sir.

"Q. From where? A. He reached in here—in his coat pocket.

"Q. Where did he throw it? A. Over on the bed, on Charlie Herndon's bed.

"Q. What did Huskey do? A. Stood there with his hands up.

"Q. Where was Pool? A. Standing in front of him—Pool reached and got his gun.

"Q. Whose gun? A. Huskey's, and commenced to hit him over the head.

"Q. Where did he get this gun of Henry Clay's? A. Off the bed.

"Q. How many guns did Pool have at the time? A. When he was whipping Huskey?

"Q. Yes, at the time he got hold of Huskey? A. He had his own gun, too.

"Q. How many did he have? A. Had two, then.

"Q. One in each hand? A. Yes, sir.

"Q. Where was Huskey and what was he doing? A. He backed up about three steps and Pool started hitting him over the head.

"Q. What with? A. Pool's pistol.

"Q. That long pistol over there? A. Yes, sir.

"Q. With the barrel of it or the butt? A. The barrel—he still held it in his hand like he was going to shoot it—but he was hitting him with it.

"Q. Where was he hitting Huskey? A. Over the head.

"Q. What was Huskey doing all this time? A. Trying to dodge some of the blows.

"Q. Was he trying to fight back? A. No.

"Q. Did he indicate for him to stop, or just what was he doing? A. He whipped him across the room, and he stayed there with his hands up and he was hollering, 'I ain't done anything—don't kill me.' Pool hit him one more lick. That was the lick that went in his eye, and he yelled, 'Don't hit me any more. I can't see. You have killed me, now.' "

It cannot be doubted that this evidence is sufficient to support the verdict.

The evidence which it is claimed was incompetent was the introduction of Huskey's revolver, which was stained with blood, and in the barrel of which was a small piece of bone. Pool testified that during the entire affray Huskey was in possession of his own revolver and

was attempting to shoot Pool with it. He did not contend that Huskey had struck him with the revolver. The evidence for the Commonwealth, as we have seen, placed both revolvers in the possession of Pool during the entire fight. It is apparent that the blood stains and particle of bone which stuck to Huskey's revolver was competent evidence to support the contention of the Commonwealth that Pool, rather than Huskey, had possession of Huskey's revolver. It is claimed that the sight of the revolver in its condition incited the minds of the jurors and caused them to render the verdict as the result of undue passion and prejudice. The punishment was fixed at the minimum for a conviction of voluntary manslaughter. The only issue in the case was whether appellant struck in sudden heat and passion, or in self-defense. The jury rejected the plea of self-defense and, by fixing the punishment at the minimum allowed under the Statute, demonstrated that the verdict was not the result of passion and prejudice.

The judgment is affirmed.